# In the United States Court of Federal Claims

No. 16-346C
Filed Under Seal: November 5, 2019
Reissued: December 10, 2019[*]
NOT FOR PUBLICATION

|  |  |
|---|---|
| GEOSPATIAL TECHNOLOGY ASSOCIATES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Motion to Dismiss; RCFC 12(b)(1); Subject-Matter Jurisdiction; Motion For A More Definite Statement; RCFC 12(e); 28 U.S.C. § 2501; Statute Of Limitations; 28 U.S.C. § 1498; Patent Infringement; Copyright Infringement; 31 U.S.C. § 3727(b); Assignment of Claims Act. |

*Richard T. Matthews*, Counsel of Record, Williams Mullen, P.C., Raleigh, NC, for plaintiff.

*Jenna Munnelly* and *Lee Perla*, Trial Attorneys, *Gary L. Hausken*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.   INTRODUCTION

In this patent and copyright infringement action, plaintiff, Geospatial Technology Associates, LLC ("GTA"), alleges that the United States infringed upon one or more of the claims of U.S. Patent No. 8,897,489, issued on November 25, 2014, (the "'489 Patent") and upon GTA's registered copyright rights in certain software code (the "NINJA.pro Copyright"). *See generally* 2d Am. Compl.  The government has moved to dismiss certain of these claims for lack

---

[*] This Memorandum Opinion and Order was originally filed under seal on November 5, 2019 (ECF No. 102).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on December 6, 2019 (ECF No. 103) stating that no redactions are necessary.  And so, the Court is reissuing its Memorandum Opinion and Order, dated November 5, 2019.

of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  *See generally* Def. Mot.  In the alternative, the government moves for an order requiring GTA to make a more definite statement regarding its claims, pursuant to RCFC 12(e).  *Id.* at 9-10.  For the reasons set forth below, the Court **GRANTS-IN-PART** the government's motion to dismiss and **GRANTS** the government's motion for a more definite statement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   Factual Background

 In this patent and copyright infringement action, GTA alleges that several government agencies—including, the Department of the Army, the Department of the Air Force, and the National Geospatial-Intelligence Agency—have used software algorithms and software code that utilize the claimed subject matter of the '489 Patent and infringed upon one or more claims of this patent.  *See generally* 2d Am. Compl.  GTA also alleges that these and other government agencies have infringed upon GTA's registered copyright rights in certain software code that is the subject of U.S. Copyright Registration No. TX 8-420-604.  *Id.*  As relief, GTA seeks to recover monetary damages from the government as compensation for these alleged infringements.  2d Am. Compl. at Request for Relief.

#### 1.   The '489 Patent

The '489 Patent patents technology involving automated image processing and target detection, which can be used for, among other things, military and drug enforcement purposes. *See generally* '489 Patent.  This patent was filed on January 28, 2011, and it relates back to provisional application No. 61/337,065, which was filed on January 29, 2010.  *Id.*  Dr. William Basener is the sole listed inventor of the '489 Patent.  *Id.*  On November 25, 2014, the United

---

[1] The facts recited in this Memorandum Opinion and Order are taken from GTA's second amended complaint ("2d Am. Compl."); the '489 Patent; the government's motion to dismiss, or alternatively, for a more definite statement ("Def. Mot.") and the exhibits attached thereto ("Def. Ex."); and GTA's response and opposition to the government's motion to dismiss, or alternatively, for a more definite statement ("Pl. Resp.") and the exhibits attached thereto ("Pl. Ex.").  Except where otherwise noted, all facts recited herein are undisputed.

States Patent and Trademark Office ("USPTO") issued the '489 Patent to the Rochester Institute of Technology ("RIT").  *Id.*

On November 12, 2015, RIT and GTA entered into an exclusive license agreement, whereby RIT transferred all substantial rights in the '489 Patent, including copyright rights in the NINJA.pro software, to GTA (the "Assignment Agreement").  2d Am. Compl. at ¶¶ 17-19, 27; *see also* Mem. Op. and Order at 16, *Geospatial Tech. Assocs., LLC v. United States*, No. 16-346C (Fed. Cl. Aug. 15, 2017).  On November 23, 2015, GTA and RIT filed a "notice of assignment" regarding the '489 Patent with the USPTO.  *Id.* at ¶¶ 20-22.

The invention, as described in the '489 Patent abstract, is as follows:

> A method, non-transitory computer readable medium and apparatus that provides object-based identification, sorting and ranking of target detections including determining a target detection score for each pixel in each of one or more images for each of one or more targets.  A region around one or more of the pixels with the determined detection score which are higher than the determined detection scores for the remaining pixels in each of the one or more identified regions with the determined object based score for each region is provided.

'489 Patent at 1.  Figure 2 of the '489 Patent provides an exemplary example of the method for target detection as shown below:



FIG. 2

*Id.* at 3.

The '489 Patent also provides that the method for target detection involves five steps. *See id.* at 4:45-6:27. First, obtaining the images. *Id.* at 4:45-4:50. Second, applying a target detection algorithm to determine a target detection score for each pixel. *Id.* at 4:51-4:60. Third, determining an object-based score for identified regions from the determined target detection scores, although other types of scores for other identification aspects could be determined. *Id.* at 5:3-5:10. Fourth, obtaining geographic location information associated with each of the images at capture.[2] *Id.* at 6:5-6:11. Lastly, the fifth step involves providing one or more identified regions with the determined object-based score for each region. *Id.* at 6:16-6:27.

The '489 Patent also provides that each step of the process described above is performed using the exemplary example of the target detection processing apparatus contained in the '489 Patent as shown below:



FIG. 1

*Id.* at 2.[3]

---

[2] The '489 Patent provides that steps three and four are repeated iteratively, until all pixels with a detection score in any detection plane above a given threshold are included in one of the regions. '489 Patent at 6:12-6:15.

[3] The numbers 12, 14 and 16 shown in Figure 1 above refer to the target detection processing apparatus; target signature library server; and a communications network, respectively. *See* '489 Patent at 2:60-2:65.

### 2.   The NINJA.pro Copyright

The United States Copyright Office has issued U.S. Copyright Registration No. TX 8-420-604, bearing an effective registration date of July 15, 2017, for work entitled "Methods for Object-Based Identification, Sorting and Ranking of Target Detection and Apparatuses Thereof." 2d Am. Compl. at Ex. 2.  William Basener is identified as the author of the computer program that is the subject of this copyright.  *Id*.  GTA is identified as the copyright claimant on the certificate of registration.  *Id*.  GTA alleges in the Second Amended Complaint that the government has engaged in "unauthorized copying, modification, distribution, and/or use of the computer program titled Methods for Object-based Identification, Sorting and Ranking of Target Detection and Apparatuses Thereof—also known as the 'NINJA.pro' software code."  *Id*. at ¶ 5.

### 3.   The '039 Patent

Lastly, U.S. Patent No. 9,076,039 (the "'039 Patent") patents technology involving probabilistic identification of solid materials in hyperspectral imagery.  *See generally* Def. Ex. A. The inventors of the '039 Patent are William Basener and Marin S. Halper.  *Id*. at 1.

On December 19, 2012, William Basener executed an assignment agreement whereby he sold and assigned to the MITRE Corporation, among other things, the right to sue for past infringement and to collect damages for the invention patented under the '039 Patent.  Def. Ex. B at 13-14, 23 (William Basener '501 application, dated December 19, 2012).  The USPTO issued the '039 Patent on July 7, 2015.  Def. Ex. A at 1.

### B.   Relevant Procedural Background

On March 16, 2016, GTA filed the complaint in this matter.  *See generally* Compl.  On June 30, 2016, the government answered the complaint.  *See generally* Answer.

On April 13, 2017, GTA filed an amended complaint.  *See generally* Am. Compl.  On May 15, 2017, the government answered the amended complaint.  *See generally* Answer to Am. Compl.

On April 8, 2019, GTA filed a second amended complaint, which added copyright infringement claims against the United States.  *See generally* 2d Am. Compl.  On June 10, 2019, the government filed a motion to dismiss GTA's patent and copyright infringement claims for lack of subject-matter jurisdiction, or, in the alternative, for a more definite statement, pursuant

to RCFC 12(b)(1) and 12(e).  *See generally* Def. Mot.  On June 28, 2019, GTA filed a response and opposition to the government's motion.  *See generally* Pl. Resp.  On July 26, 2019, the government filed a reply in support of its motion to dismiss, or, in the alternative, for a more definite statement.  *See generally* Def. Reply.

The government's dispositive motion having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also* RCFC 12(b)(1).  But, plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim."  *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Tucker Act is, however, "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists."  *United States v. Testan*, 424 U.S. 392, 398 (1976).  And so, to pursue a substantive right against the United States under the Tucker Act, GTA must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract

with the United States; or an illegal exaction of money by the United States.  *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Martinez v. United States*, 333 F.3d 1295, 1302 (Fed. Cir. 2003). "[A] statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'"  *Fisher*, 402 F.3d at 1173 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)).

###### B.     Patent And Copyright Infringement Claims Under 28 U.S.C. § 1498

Title 28, United States Code, section 1498(a) waives the government's sovereign immunity and provides a remedy "[w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same . . . ."  28 U.S.C. § 1498(a); *see also Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1277 (Fed. Cir. 2015).  Section 1498(a) provides that:

> [T]he owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a); *see also Astornet Techs. Inc.*, 802 F.3d at 1277.  To have standing to bring a patent infringement action against the United States, a plaintiff must own the patent on which the infringement suit is based.  *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571-72 (Fed. Cir. 1997).  A plaintiff owns a patent if that plaintiff is either:  (1) the "holder of record title" or (2) "at a minimum, . . . the person equitably entitled to the rights in the patent." *Heinemann v. United States*, 620 F.2d 874, 877 (Ct. Cl. 1980).

Title 28, United States Code, section 1498(b) waives the government's sovereign immunity with regards to copyright infringement claims.  28 U.S.C. § 1498(b).  Section 1498(b) provides a remedy "whenever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States."  *Id.*  In such cases, "the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims."  *Id.*

Claims brought pursuant to Section 1498 are subject to a limitations period, specifically, Section 1498(b) provides that "no recovery shall be had for any infringement of a copyright . . . committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action." 28 U.S.C. § 1498(b). The Court has held that the limitations periods applicable to Section 1498 claims are jurisdictional. *See Aviation Software, Inc. v. United States*, 101 Fed. Cl. 656, 662 (2011) (citing *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1380 (Fed. Cir. 2008)). The patent infringement claims brought in this Court are also subject to the six-year statute of limitations under title 28, United States Code, section 2501, which provides that: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."[4] 28 U.S.C. § 2501. Given this, the applicable statute of limitations periods are six years for patent infringement claims and three years for copyright infringement claims that are brought before this Court. And so, such claims must have first accrued within these limitation periods to be actionable. *Id.*

C.     The Assignment Of Claims Act Under 31 U.S.C. § 3727

This Court has recognized that the Tucker Act waives the government's sovereign immunity "for assignees of a claim, unless a statute bars such an assignment." *See Ins. Co. of the W. v. United States*, 100 Fed. Cl. 58, 62 (2011); *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1375 (Fed. Cir. 2001). The Assignment of Claims Act (the "ACA") constitutes such a

---

[4] The Court has held that a patent infringement action arises under Section 1498(a) "when the 'accused [instrumentality] is first available for use, and it is when the use occurs that the license is considered to have been taken.'" *Unitrac, LLC v. United States*, 113 Fed. Cl 156, 160 (2013) (quoting *Decca Ltd. v. United States*, 544 F.2d 1070, 1082 (Ct. Cl. 1976)). And so, the government's alleged ongoing patent infringement cannot justify jurisdiction under Section 1498, "simply because at least one act of infringement has occurred within the statute of limitations period." *Id.* at 161. The Court has also held that a copyright cause of action pursuant to Section 1498(b) "accrues as late as, and the statute of limitations begins to run from, the time of the most recent act of infringement in a series of infringing act." *Wechsberg v. United States*, 54 Fed. Cl. 158, 161 (2002). And so, "[w]hen multiple or successive acts of [copyright] infringement are alleged, the separate accrual rule may be implicated." *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 494 (2019); *see also Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 671-72 (2014) (explaining that, "[u]nder [the separate-accrual rule], when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each new wrong gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs.").

statutory bar to the waiver of the government's sovereign immunity.  *Ins. Co. of the W.*, 100 Fed. Cl. at 62.

The ACA defines an "assignment" as:  "(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim."  31 U.S.C. § 3727(a).  In this regard, the ACA provides that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."  31 U.S.C. § 3727(b). There is an exception to this requirement when an assignment is made to a financial institution of money due, or to become due, under certain contracts.  31 U.S.C. § 3727(c).

The Supreme Court has explained that the "primary purpose" of the ACA is:

> [U]ndoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the [g]overnment, and . . . to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the [g]overnment to deal only with the original claimant. Other courts have found yet another purpose of the statute, namely, to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'

*United States v. Shannon*, 342 U.S. 288, 291-92 (1952) (footnote omitted) (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949)).  And so, this Court has recognized that the ACA "generally renders ineffective voluntary assignments of unliquidated claims against the government."  *3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273, 277 (2017).  This Court has also held that assignments of patent rights are subject to the ACA.  *Id.*  Given this, "voluntary assignments of patent claims are ineffective against the government, unless they qualify for one of the judicially-recognized exceptions, or otherwise do not run afoul of the purposes" of the ACA.  *Id.*

### D.    RCFC 12(e)

Lastly, under RCFC 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  RCFC 12(e).  A motion for a more definite statement "must point out the defects complained of and the details desired."  *Id.*  The Court may also order a more definite statement *sua sponte*.  *Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 26

(D.D.C. 2013).   And so, this Court has exercised its authority to order a more definite statement of a claim, if the complaint is "so vague or ambiguous that the [United States] cannot reasonably prepare a response." *Gal-Or v. United States*, 93 Fed. Cl. 200, 205 (2010) (citing RCFC 12(e)).

## IV.   LEGAL ANALYSIS

The government has moved to dismiss GTA's patent and copyright infringement claims for lack of subject-matter jurisdiction for three reasons.   First, the government argues that the Court should dismiss these claims to the extent that the claims first accrued before the three-year statute of limitations period applicable to copyright infringement claims or the six-year statute of limitations period applicable to patent infringement claims, pursuant to 28 U.S.C. §§ 1498 and 2501.   Def. Mot. at 6-7.   Second, the government argues that the Court should dismiss any copyright or patent infringement claims that accrued before GTA was assigned its interest in the patent-in-suit pursuant to the ACA.   *Id*. at 7-8.

Third, the government argues that the Court should also dismiss any of GTA's patent infringement claims that relate to the alleged use of the PRISM software, because GTA is not the owner of that software.   *Id*. at 8-9.   Lastly, the government requests, in the alternative, that the Court order GTA to provide a more definite statement regarding the factual allegations in the Second Amended Complaint to support GTA's patent and copyright infringement claims, pursuant to RCFC 12(e).   *Id*. at 9-10.

 In its response and opposition to the government's motion, GTA counters that the Court possesses subject-matter jurisdiction to consider its patent and copyright infringement claims because:  (1) Section 1498 does not preclude any of GTA's infringement claims; (2) the ACA does not apply to, or bar, its claims; and (3) the '039 Patent has no impact upon GTA's patent infringement claims related to the patented PRISM software.   *See generally* Pl. Resp.   In addition, GTA argues that it has alleged a short and plain statement to establish jurisdiction and support its infringement claims in the Second Amended Complaint.   *Id*. at 18; *see also* RCFC 8. And so, GTA requests that the Court deny the government's motion to dismiss and, in the alternative, motion for a more definite statement.   Pl. Resp. at 19.

For the reasons discussed below:  (1) GTA's patent and copyright infringement claims are limited by the statute of limitations set forth in Sections 1498 and 2501; (2) GTA's patent and copyright infringement claims are also subject to, and limited by, the Assignment of Claims

Act and these claims must have first accrued after RIT transferred all substantive rights in the '489 Patent and the copyright rights in the NINJA.pro software to GTA; and (3) the current factual record does not show that GTA is precluded from pursuing infringement claims related to the patented PRISM software.  In addition, a review of the Second Amended Complaint makes clear that GTA must provide a more definite statement regarding its infringement claims.  And so, the Court **GRANTS-IN-PART** the government's motion to dismiss and **GRANTS** the government's motion for a more definite statement.

### A.      GTA's Infringement Claims Are Limited By Sections 1498 And 2501

As an initial matter, GTA's patent infringement claims in this action are limited to those claims that first accrued on or after March 16, 2010, and GTA's copyright infringement claims must have first accrued on or after April 8, 2016.  It is well-established that the limitations periods applicable to patent and copyright infringement claims brought pursuant to 28 U.S.C. § 1498 are jurisdictional.  *See Aviation Software, Inc. v. United States*, 101 Fed. Cl. 656, 662 (2011) (citing *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1380 (Fed. Cir. 2008)).  It is also well-established that claims brought in this Court—including patent infringement claims— are subject to a six-year statute of limitations under 28 U.S.C § 2501.  *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008).  And so, GTA's patent infringement claims in this matter are jurisdictionally precluded unless filed within six years after such claims first accrued.  28 U.S.C. § 2501.

GTA filed the original complaint in this matter on March 16, 2016.  *See generally* Compl.  And so, to be timely, GTA's patent infringement claims must have first accrued within six years of that date—on or after March 16, 2010.  28 U.S.C. § 2501.  GTA alleges in the Second Amended Complaint that the USPTO issued the patent-in-suit at issue in this case on November 25, 2014.  2d Am. Compl. at ¶ 1; *see also* Pl. Resp. at 7.  Given this, the Court reads the Second Amended Complaint to assert patent infringement claims that first accrued no earlier than November 25, 2014.  Because this date falls well within the six-year limitations period applicable to GTA's patent infringement claims, the Court finds no grounds for dismissing GTA's patent infringement claims as untimely pursuant to 28 U.S.C. § 2501.

GTA's copyright infringement claims are also limited to those claims that first accrued three years before GTA filed the Second Amended Complaint—on or after April 8, 2016.  Under

28 U.S.C. § 1498(b), "no recovery shall be had for any infringement of a copyright . . . committed more than three years prior to the filing of the complaint or counterclaim for infringement in the action."  28 U.S.C. § 1498(b).  GTA asserted its copyright infringement claims in this litigation for the first time in the Second Amended Complaint dated April 8, 2019.[5] *Compare* 2d Am. Compl. at ¶¶ 98-102, *with* Am. Compl. at ¶¶ 55-58, and Compl. at ¶¶ 27-29 (showing that the claims for relief in the complaint and amended complaint do not include a copyright infringement claim).  And so, the Court agrees with the government that GTA's copyright infringement claims must be limited to those claims that first accrued on or after April 8, 2016.  28 U.S.C. § 1498(b).

## B. The ACA Limits GTA's Infringement Claims

The government also persuasively argues that GTA's patent and copyright infringement claims are limited by the statutory bar to the government's waiver of sovereign immunity under the Assignment of Claims Act.  The ACA requires that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."  31 U.S.C. § 3727.  This Court has held that assignments of patent rights are subject to the ACA.  *3rd Eye Surveillance, LLC v. United States*, 133 Fed. Cl. 273, 277 (2017).  And so, voluntary assignments of patent claims are generally ineffective against the government, unless they qualify for one of the judicially-recognized exceptions, or otherwise do not run afoul of the purposes of the ACA.  *Id.*

In this regard, the Supreme Court has explained that the "primary purpose" of the ACA is:

> [U]ndoubtedly to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the [g]overnment, and . . . to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the [g]overnment to deal only with the original claimant. Other courts have identified a third purpose of the ACA, namely, to save to the United States 'defenses which it has to claims by an assignor by way of set-off, counter claim, etc., which might not be applicable to an assignee.'

---

[5] GTA's copyright claims should not relate back to the filing of the original complaint, because these claims are based upon newly alleged conduct and may involve different evidence than the evidence required to resolve GTA's patent infringement claims.  RCFC 15(c); Def. Mot. at 10.

*United States v. Shannon*, 342 U.S. 288, 291-92 (1952) (footnote omitted) (quoting *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949)).  And so, this Court has recognized that the ACA "generally renders ineffective voluntary assignments of unliquidated claims against the government."  *3rd Eye Surveillance*, 133 Fed. Cl. at 277.

In its motion to dismiss, the government argues that the Court should dismiss any of GTA's patent and copyright infringement claims that first accrued before RIT transferred its rights in the '489 Patent and the copyright rights in the NINA.pro software to GTA on November 12, 2015, pursuant to the ACA.  Def. Mot. at 2, 7-8; *see also* 2d Am. Compl. at ¶¶ 17-20, 27.  The Court agrees for two reasons.

First, there can be no genuine dispute that the ACA limits the government's waiver of sovereign immunity with respect to GTA's claims.  The parties agree that the statutory exceptions to the ACA are not applicable to GTA's claims.  Pl. Resp. at 8-17; *see also* Def. Reply at 4-7.

The government also argues with persuasion that several of the stated purposes of the ACA are served by the application of the ACA to GTA's claims in this case.  *Shannon*, 342 U.S. at 291-92 (footnote omitted) (quoting *Aetna Cas. & Surety Co.*, 338 U.S. 366, 373 (1949)) (The primary purposes of the ACA are:  (1) to prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the government; (2) to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the government to deal only with the original claimant; and (3) to save to the United States certain defenses which it has to claims by an assignor, which might not be applicable to an assignee); *see also* 31 U.S.C. § 3727.  For example, the government argues that there is a risk that multiple infringement claims could be brought against the government unless the ACA applies to this case, because GTA has not shown that RIT is unable to separately pursue patent and copyright infringement claims related to the '489 Patent against the government.  Def. Reply at 5-6.  And so, application of the ACA to GTA's infringement claims will prevent possible multiple payment of claims.

The government also convincingly argues that it may have other defenses against any patent and/or copyright infringement suits that RIT, or another party, may bring against the government related to the '489 Patent.  *Id.* at 7.  Another purpose of the ACA is to save such

defenses to the government.  Given this, the Court concurs with the government that application of the ACA to GTA's patent and copyright infringement claims is consistent with the underlying purposes of that statute and appropriate in this case.[6]  Because GTA has identified no basis for excluding its patent and copyright infringement claims from the reach of the ACA, the Court limits these infringement claims to those claims that first accrued no earlier than November 12, 2015.  31 U.S.C. § 3727.

### C.    The Government Has Not Shown That GTA Is Precluded From Pursuing Claims Related To PRISM

The government's argument that GTA should be precluded from pursuing any infringement claims related to the use of the patented PRISM software at this stage in the litigation is less convincing.  Def. Mot. at 8-9.  GTA alleges in this action that the government's PRISM program is the product of the unauthorized copying and/or modification to the NINJA.pro software code and that the copyright rights to the NINJA.pro software code have been assigned to GTA.  2d Am. Compl. at ¶¶ 5-8, 27, 40.  But, the government argues—and GTA does not dispute—that GTA is not the owner of the PRISM software.  Def. Mot. at 8; 2d Am. Compl. at ¶¶ 39-41; *see generally* Pl. Resp.  In fact, it is undisputed that the PRISM software is owned by the MITRE Corporation.[7]  Def. Ex. B (showing that MITRE Corporation is the assignee of the '039 Patent that patents the PRISM software).

The Court agrees with the government's argument that GTA cannot pursue any infringement claims that are based upon patented software code that it does not own.  But, GTA argues with some persuasion that it may be able to pursue its infringement claims related to the PRISM software in this case, because GTA has separately patented improvements and/or modifications to the PRISM software code under the '489 Patent.  Pl. Resp. at 5-6.  Given this,

---

[6] GTA's argument that the ACA should not apply to its claims because of "the government's affirmative misconduct" is also unsubstantiated.  Pl. Resp. at 11-14.  GTA provides no evidence to support its claim that the government has engaged in any misconduct or acted in bad faith during the course of this litigation.  *Id.*; *see also Spezzaferro v. F.A.A.*, 807 F.2d 169, 173 (Fed. Cir. 1986).

[7] It is undisputed that the PRISM software code is patented in U.S. Patent No. 9,076,039 and that the inventors of the '039 Patent are William Basener and Marin S. Halper.  Def. Ex. A.  It is also undisputed that William Basener executed an assignment agreement whereby he sold and assigned his rights under the '039 Patent to the MITRE Corporation.  Def. Ex. B at 13-14, 23 (William Basener '501 application, dated December 19, 2012).

the Court is not convinced that GTA will be unable to show that the '489 Patent can provide a basis for its infringement claims related to the patented PRISM software based upon the current factual record in this case.  And so, the Court declines to dismiss GTA's PRISM-related claims at this stage in the litigation.[8]

### D.      GTA Must Provide A More Definite Statement

As a final matter, a careful review of the Second Amended Complaint makes clear that GTA must provide a more definite statement regarding the governmental entities and programs that it alleges have infringed upon the patent-in-suit or the copyright at issue in this case.  RCFC 12(e); *Gal-Or v. United States*, 93 Fed. Cl. 200, 205 (2010) (The Court may order a more definite statement of a claim, if the complaint is "so vague or ambiguous that the [United States] cannot reasonably prepare a response.").  GTA identifies at least 26 different governmental entities that it alleges have infringed upon the '489 Patent and the copyright at issue in the Second Amended Complaint.  2d Am. Compl. at ¶ 12.  But, GTA fails to identify the *specific* program or office within these governmental entities that has engaged in the alleged infringing acts.  *Id.*; *see also* Def. Reply at 17.  Given this, GTA's allegations in the Second Amended Complaint about the governmental entities that have infringed upon the patent-in-suit or copyright at issue are so vague and ambiguous that the government cannot prepare an informed response.  And so, GTA is **ORDRED** to include the following information in a more definite statement:

(1) the governmental entities and offices that GTA alleges have infringed upon the patent-in-suit or the copyright rights at issue;

(2) the governmental programs that GTA alleges have infringed upon the patent-in-suit or the copyright rights at issue; and

(3) the date on which the first use occurred with respect to the alleged infringement by each of the aforementioned governmental entities and/or programs.

---

[8] The government also argues in its reply brief that the '489 Patent cannot be a so-called "blocking patent," because the claims of this patent can only extend to the specific algorithm disclosed in the '489 Patent to be valid.  Def. Reply at 15-16.  Because the government raises this argument for the first time in its reply brief, and the parties will more fully brief the issue of patent invalidity during the next stage of this litigation, the Court does not reach the issue of patent invalidity in resolving the government's motion to dismiss.

## V.      CONCLUSION

In sum, GTA's patent infringement claims are limited to those claims that first accrued on or after November 12, 2015, and GTA's copyright infringement claims are limited to those claims that first accrued on or after April 8, 2016.  In addition, the government has not shown, at this stage in the litigation, that GTA should be precluded from pursuing any infringement claims related to the patented PRISM software.  Lastly, GTA must provide a more definite statement regarding the governmental entities and programs that it alleges have infringed upon the patent-in-suit and the copyright rights at issue, to permit the government to provide an informed response to the Second Amended Complaint.

And so, for the foregoing reasons, the Court:

1.   **GRANTS-IN-PART** the government's motion to dismiss;

2.   **GRANTS** the government's motion for a more definite statement;

3.   **ORDERS** GTA to provide a more definite statement on or before **December 6, 2019**; and

4.   **ORDERS** the parties to **FILE** a joint status report, on or before **December 6, 2019**, proposing a briefing schedule on the issue of patent invalidity, and, if warranted, a briefing schedule for the parties' cross-motions to compel.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on August 13, 2019.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **December 6, 2019.**

       **IT IS SO ORDERED.**

                                        s/ Lydia Kay Griggsby
                                        LYDIA KAY GRIGGSBY
                                        Judge