# In the United States Court of Federal Claims

No. 16-346C
(Filed: September 2, 2022)
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * *

| | |
|---|---|
| GEOSPATIAL TECHNOLOGY ASSOCIATES, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES,<br><br>*Defendant*. | 28 U.S.C. § 1498(b); Copyright infringement; FAR 52.227-14; FAR 52.227-11; Works prepared while in government service. |

* * * * * * * * * * * * * * * * * *

ORDER

Pending in this patent and copyright action are two dispositive motions from defendant regarding the copyright claims based on work that the inventor performed pursuant to a brief subcontract he had with a firm performing services for the government in 2010.  The primary arguments for both defendant's motion to dismiss and motion for summary judgment largely mirror each other.  For its motion to dismiss, the government argues that 28 U.S.C. § 1498(b)'s provisos bar plaintiff from bringing a claim for copyright infringement against the government because the software now asserted as infringed was used by Dr. Basener, the inventor, during his work for the government.  The first proviso bars suits brought by government employees if they were "in a position to order, influence, or induce the use of the copyrighted work."[1]  28 U.S.C. § 1498(b) (2018).  The second and

---

[1] The government argues that all three provisos are met; however, we need not address the first proviso, as Dr. Basener was not a government employee. The term used in the other two provisos in Section 1498(b)—"in . . . the service of the United States"—belies defendant's argument that the first proviso's use of "employee" also embraces contractual relationships.

1

third provisos require that Dr. Basener have prepared NINJA.pro (the copyrighted software) pursuant to his official functions or used government time, materials, or facilities in preparing it. Thus, if Dr. Basener prepared NINJA.pro before the subcontract began, then he did not prepare NINJA.pro pursuant to his official functions or with government time, materials, or facilities.[2]

Defendant's motion for summary judgment raises a similar issue. The government argues that FAR Clause 52.227-14(c)(1)(iii) gives it a "paid-up, nonexclusive, irrevocable, worldwide license in such copyrighted computer software to reproduce, prepare derivative works, and perform publicly and display publicly (but not to distribute copies to the public) by or on behalf of the Government" because Dr. Basener's software was "data first produced in the performance of [a] contract." Therefore, a similar question arises of whether NINJA.pro was produced before the GeoSage contract or during it.[3]

Defendant raised a new argument in its supplemental reply filed on August 17, 2022, contending that FAR 52.227-14(b) gives the government unlimited rights in NINJA.pro. FAR 52.227-14(b)(1)(iv) states that "the Government shall have unlimited rights in- [a]ll other data delivered under this contract unless provided otherwise for limited rights data or restricted computer software in accordance with paragraph (g) of this clause." "*Unlimited rights* means the rights of the Government to use, disclose, reproduce, prepare derivative works, distribute copies to the public, and perform publicly and display publicly, in any manner and for any purpose, and to have or permit others to do so." FAR 52.227-14(a). Data under this clause includes computer software. Defendant argues that, because NINJA.pro was delivered to it and was not otherwise restricted, it received

---

Congress was aware of the distinction and embraced a wider range of relationships with the government in the second and third provisos. 28 U.S.C. § 1498(b).

[2] Unless his revisions to the software while working for the government amounted to a new and separately copyrightable version of NINJA.pro. In any event, what is necessary to decide either issue is the facts concerning the genesis and evolution of the software. Those facts are disputed

[3] The government also makes a number of new arguments in its supplemental briefs that were not present in its initial briefs.

unlimited rights in it.  Plaintiff responds that NINJA.pro was not delivered to the government because it was not a deliverable under Dr. Basener's subcontract, and it avers that his work on the NINJA.pro code during the subcontract amounted only to bug fixes and adapting NINJA.pro to interface with government systems.

At this stage, the facts are not sufficiently developed to show what was either prepared or produced before and during the GeoSage contract. While the government argues that the volume of Dr. Basener's changes made to NINJA.pro during the subcontract show that a new version of NINJA.pro was created, we cannot reach that conclusion on the current record.[4] Defendant also points to the version of NINJA.pro in the copyright deposit lodged by plaintiff in 2015 as evidence that the relevant version of NINJA.pro includes the changes made during the subcontract.

Plaintiff, at this point in the proceedings, has proffered secondary evidence that a version of NINJA.pro pre-existed the GeoSage contract.  The GeoSage subcontract, when describing the work to be done by Dr. Basener, states that NINJA.pro was "developed at Rochester Institute of Technology." Def.'s Mot. to Dismiss Ex. C at US_016210.  Further, the January 29, 2010 provisional patent application shows a demonstration of NINJA.pro, and while that does not include any of the software code, it is at least an indication that there was a functional version of NINJA.pro prior to the contract. Finally, during the June 7, 2022 oral argument, government counsel admitted that "there was an expression [of NINJA.pro at the end of January 2010]," before the subcontract began.[5]  Tr. 10:16–18 (June 7, 2022).  Collectively, plaintiff has shown enough to withstand the defendant's motion to dismiss and motion for summary judgment at this stage in the proceedings based on the questions of when NINJA.pro was prepared or produced and whether Dr.

---

[4] The parties submitted redlined comparisons of different versions of the code in an attempt to establish the substantiality, *vel non*, of the edits that Dr. Basener made during his contract work.

[5] Government counsel caveated that statement during the August 25, 2022 oral argument, however, stating that she admits that portions of NINJA.pro predated the contract, but could not say whether a complete version of NINJA.pro predated the subcontract as there was no source code for that version.

Basener's changes during the subcontract created a new expression of the software.[6]

Regarding the government's argument about 52.227-14(b), we again find that the facts are not developed enough for us to answer the question of whether NINJA.pro was delivered to the government or was data first produced during the contract. While the subcontract does not list NINJA.pro as a deliverable, the government has the source code and thus argues that it was *ipso facto* delivered to it during performance of the contract. We find, however, that there remains a fact question of what was delivered to the government during the subcontract.[7]

In sum, too many questions remain unanswered to grant either motion at this point. Accordingly, the government's motion to dismiss (ECF No. 277) and motion for summary judgment (ECF No. 279) are both denied without prejudice. The issues raised in the motions are preserved for trial.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge

---

[6] Plaintiff also indicated during the August 25, 2022 oral argument that it is seeking additional discovery to find earlier versions of NINJA.pro and is prepared to offer an affidavit from Dr. Basener that the February 15, 2010 version of the code can be used to establish a pre-contract version of NINJA.pro.

[7] There remain other fact questions as well raised throughout the briefings. For example, there remains a fact question of ownership over the NINJA.pro copyright. The government has alleged that there are multiple other authors of NINJA.pro who may have ownership interests in the software. Further, Rochester Institute of Technology's ownership of NINJA.pro's copyright predating the subcontract is challenged by the government, affecting plaintiff's eventual purchase of the copyright.