# In the United States Court of Federal Claims

No. 16-346C
(Originally filed: May 3, 2024)
(Re-issued: May 20, 2024)[1]

* * * * * * * * * * * * * * * * *

GEOSPATIAL TECHNOLOGY
ASSOCIATES, LLC

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*.

* * * * * * * * * * * * * * * * *

    *Richard T. Matthews*, Williams Mullen, P.C., of Washington, DC, for plaintiff.

    *Jenna Munnelly*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Scott Bolden*, Director, for defendant. *Brian N. Gross*, of counsel.

<u>OPINION</u>

BRUGGINK, *Judge*.

    This is a patent and copyright infringement suit brought against the United States for the alleged unauthorized use of plaintiff's intellectual property in its target detection system and software, known as NINJA.pro. Pending before the court are two motions relating solely to plaintiff's copyright claim: defendant's motion to dismiss, or in the alternative for summary judgment, ECF No. 360, and defendant's motion for summary

---

[1] This opinion was originally issued under seal, and the parties were given an opportunity to propose redactions of any protected material. The parties agreed that none were necessary, so it appears in full.

judgment, ECF No. 361.[2]  For the reasons discussed below, we deny both motions.  The issues they raise must be addressed at trial.

DISCUSSION

**I.        Defendant's Motion to Dismiss[3]**

Defendant first moves to dismiss plaintiff Geospatial Technology Associates, LLC's ("GTA") copyright infringement claim for lack of jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), or in the alternative for summary judgment under RCFC Rule 56. Defendant argues that GTA's claim is jurisdictionally barred by 28 U.S.C. § 1498(b) because approximately half of the copyrighted work was prepared by persons in the service of the United States, as part of their official functions, and because the copyrighted work was prepared with government time, material, or facilities.

28 U.S.C. § 1498(b) governs allegations of copyright infringement against the United States and provides a waiver of sovereign immunity for such claims.  The waiver is followed by three disjunctive provisos, the second and third of which are relevant here:

> *Provided, however*, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used.

---

[2] Several other motions *in limine*, are pending, but this order addresses only these two motions.

[3] The facts relied on when addressing defendant's motion to dismiss are drawn from the parties' briefings on the two motions and attached exhibits as well as plaintiff's Fourth Amended Complaint, ECF No. 115, and the copyright registration attached thereto.

28 U.S.C. § 1498(b).  For clarity, we will refer to the provisos separately as "the official functions proviso" and "the government time, material, or facilities proviso."

The Federal Circuit has held that the § 1498(b) provisos are jurisdictional, in that the provisos "carv[e] out three classes of copyright infringement claims from the Government's general waiver of sovereign immunity for copyright infringement." *Blueport Co. LLC v. United States*, 533 F.3d 1374, 1380 (Fed. Cir. 2008).  Plaintiffs bringing a copyright infringement claim have the burden of showing that their claim is not barred jurisdictionally by these provisos. *Id.* at 1381.  Plaintiffs must prove this by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Accordingly, GTA must show that the copyrighted work was prepared by persons not in the "employment or service of the United States"—so that neither proviso applies—or, if it was prepared by persons in the "employment or service of the United States," that (1) the work was not prepared as part of the persons' official functions, and (2) the work was not prepared using government time, material, or facilities.  For purposes of this analysis, we have previously determined that the term "in service of the United States," as used in the § 1498(b) provisos, encompasses contractual relationships, and is not limited to employer-employee relationships.  Order at 1-2 n.1, Sept. 2, 2022, ECF No. 322.

Before discussing the present motion in any further detail, we find it useful to briefly set out some relevant background.  First, two undisputed time periods are relevant to this motion: the periods during which Dr. William Basener, GTA's president and the author of NINJA.pro, was in government service.  Dr. Basener's first stint in government service was from 2007 to 2008, under contract as a visiting scientist at the National Geospatial-Intelligence Agency ("NGA").  His second period in government service was from February to May 2010, as a subcontractor on the GeoSage contract for the NGA.

Second, a previous motion to dismiss filed by defendant provides helpful context for the present motion.  Defendant first filed a motion to dismiss based on these provisos on January 3, 2022.  ECF No. 277.  There, defendant argued that NINJA.pro was prepared by Dr. Basener while in service of the United States under the GeoSage contract from February to May 2010.  In response, plaintiff provided secondary evidence that a version of NINJA.pro pre-existed Dr. Basener's work under the GeoSage contract.

The court denied that motion without prejudice because the facts were not sufficiently developed to show what was prepared before versus during the GeoSage contract.  Order at 3, Sept. 22, 2022, ECF No. 322.

Turning to the present motion, defendant first argues that NINJA.pro falls within the official functions proviso.  This proviso qualifies our jurisdiction in that it prohibits any right of action "with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee."  § 1498(b).  As explained by Judge Block in *Blueport Co. LLP v. United States*, the term "official functions" as used in the provisos is similar to the term "scope of employment" as used in agency law.  76 Fed. Cl. 702, 725 (2007), *aff'd*, 533 F.3d 1374 (Fed. Cir. 2008).  Judge Block looked to the Restatement (Second) of Agency, which indicates that:

> Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.

*Id.* (quoting Restatement (Second) of Agency § 228(1) (Am. Law. Inst. 1958)).  The Restatement explains further that "[t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized."  *Id.* at 726 (quoting Restatement (Second) of Agency § 229(1)).  Thus, to determine what one's "official functions" are for purposes of § 1498(b), we address three factors: (1) "the general type of work performed" for that position, (2) "if the work occurred within the authorized time and space limits," and (3) "the employee's motivation in producing the work."  *Blueport*, 76 Fed. Cl. at 726, 727, 729.

Defendant argues that the official functions proviso applies to NINJA.pro because the software file that started under a different name, but eventually became NINJA.pro, was prepared by people employed by or in service of the United States, and as part of their official duties.  Defendant's argument focuses on Dr. Basener's first period of government service from

2007 to 2008, and his work with Dr. Thomas Braun at NGA.[4]  At a high level, defendant argues that the copyrighted work, NINJA.pro, began as a file named background_mod_mf.pro; that the official functions proviso applies to background_mod_mf.pro; and that the official functions proviso, therefore, applies to NINJA.pro.

The facts relied on by defendant to support this argument are relatively straightforward and are drawn primarily from the deposition transcripts of Dr. Basener and Dr. Braun, as well as an email sent by Dr. Braun.  The file named background_mod_mf.pro was written by Dr. Basener and Dr. Braun during Dr. Basener's first period of government service, 2007 to 2008.  *See* ECF No. 360-3 at 102:21-103:1 (Dr. Basener's deposition transcript); ECF No. 360-2 (email from Dr. Braun).  Dr. Basener continued working on a version of background_mod_mf.pro after leaving that first period of government service, renaming the file NINJA.pro at some time prior to his second period of government service in 2010.  *See* ECF No. 360-3 at 265:16-266:4 (Dr. Basener's deposition transcript).

Other than the extent of Dr. Braun's involvement in the creation of background_mod_mf.pro, none of these facts are meaningfully disputed by plaintiff anywhere in its response to defendant's motion.  *See* ECF No. 374 at 3-13 (Response to Alleged Undisputed Facts).  Plaintiff notes in response that, at his deposition, Dr. Braun was unable to identify any particular lines of the code he had written in an exhibit he was provided, ECF 374-2 at 65:7-12.  The preceding portion of the deposition transcript shows, however, that Dr. Braun confirmed that he and Dr. Basener had worked on background_mod_mf.pro together at NGA.  *Id.* at 64:12-17.

Relying on these facts, defendant argues that background_mod_mf.pro was prepared by Dr. Braun (a government employee) and Dr. Basener (in service of the United States under his Visiting Scientist contract) as part of their official functions.  Using Dr. Braun's deposition transcript, defendant argues that Dr. Braun was hired to work on hyperspectral technologies, and that preparing background_mod_mf.pro was of the general type of work performed for his position.  Background_mod_mf.pro was written to be part of software called Topological Anomaly Detector ("TAD"), which itself falls within the scope of Dr. Braun's work on hyperspectral technologies.  Defendant also notes

---

[4] It is undisputed that Dr. Braun was a government employee during this time. ECF No. 374 at 8.

that nothing in the record indicates that Dr. Braun worked on background_mod_mf.pro outside the authorized time and space limits of his work at NGA, or that Dr. Braun had a motivation other than his work responsibilities.  Similarly, defendant argues that the scope of Dr. Basener's Visiting Scientist contract included anomaly and target detection, of which background_mod_mf.pro is a part.  Therefore, defendant argues, work on background_mod_mf.pro was within both Dr. Braun's and Dr. Basener's official functions.

Separately, defendant also argues that the government time, material, or facilities proviso applies to NINJA.pro.  Again, defendant argues that the copyrighted work, NINJA.pro, began as background_mod_mf.pro; and that because the proviso applies to background_mod_mf.pro, the proviso, therefore, also applies to NINJA.pro.  Here, defendant argues that background_mod_mf.pro was prepared by Dr. Braun (a government employee) and Dr. Basener (in service of the United States under his Visiting Scientist contract) while at an NGA facility and using NGA's computer system.

While not explicit in its argument regarding either proviso, a fundamental assumption of defendant's arguments is that, for the provisos to be applicable, it is sufficient for there to be some level of overlap between the code in the original file and the code of the copyrighted work.  Defendant does not, however, flesh out this assumption or address the underlying legal basis for this position.

In response to these arguments regarding the two provisos, plaintiff makes five arguments: that only the "NINJA functionality" of NINJA.pro is relevant; that the government relied on the wrong version of background_mod_mf.pro in advancing its motions; that the government mischaracterizes plaintiff's expert's report; that Dr. Braun could not recall writing background_mod_mf.pro; and that the provisos do not apply to either Dr. Braun or Dr. Basener.

Plaintiff's first argument is that only the "NINJA functionality" of NINJA.pro is relevant to the copyright claims.  This newly drawn distinction is helpful to plaintiff because plaintiff claims that Dr. Basener wrote the NINJA functionality in July 2009, conveniently between his periods of government service.  *See* ECF No. 374 at 14-15 (citing a July 23, 2009 email thread "showing execution of trial version of background_mod.mf.pro with

NINJA functionality"). Plaintiff is trying to thread a needle with this timeline to avoid contradicting its arguments in response to defendant's earlier motion to dismiss. Yet, plaintiff does not explain the basis for this distinction or why the NINJA functionality should be considered separately from the NINJA.pro code as a whole in the court's proviso analysis, nor does plaintiff even explain what NINJA functionality is. In making this distinction, plaintiff is essentially arguing that the copyrighted work consists solely of code containing the NINJA functionality, yet plaintiff does not identify the code for which it is now claiming a copyright. The implication of this argument is that the proviso analysis should be focused on the preparation of the core functionality of a copyrighted work. This seems to be in contrast with defendant's focus on the evolution of the entire copyrighted work, i.e., regardless of the form or function of the end version of the software, because its genesis was at NGA, and used government time and materials, both provisos apply.

Plaintiff also asserts that the government relied on the wrong version of background_mod_mf.pro. There are apparently at least two versions of code bearing the file name "background_mod_mf.pro Version 0.4," with substantially different content. One version has been filed as Exhibit A to defendant's motion to dismiss, ECF No. 360-1, and another as Exhibit 1 to plaintiff's response to that motion, ECF No. 374-1.[5] Plaintiff alleges that its version (Exhibit A to ECF No. 360) is the only version relevant to its copyright claim. Thus, plaintiff argues, defendant's arguments and comparison of code with the wrong version is meaningless.

Plaintiff's third argument focuses on defendant's purported mischaracterization of plaintiff's expert report on infringement. Plaintiff argues that, to the extent that the government ignores Appendix D to Dr. Jones' report to establish overlap between background_mod_mf.pro and the code plaintiff accuses now, the citations to Dr. Jones' report are misleading. Appendix D identifies the portions of source code that Dr. Jones intended to exclude from his analysis whereas the body of his report contains several "oversights or typographical errors or artifacts." ECF No. 374 at 17. In the

---

[5] Regardless of which version of background_mof_mf.pro it is appropriate for the court to rely on, plaintiff does point out that defendant lists its version as dated June 3, 2008, but there is no metadata or other evidence supporting this date.

motion, defendant referred to Dr. Jones' report and stated that Dr. Jones relied on portions of NINJA.pro which came from background_mod_mf.pro and from portions of NINJA.pro created under the GeoSage contract in his infringement analysis.

Plaintiff then argues that neither alleged co-author could recall writing any portions of background_mod_mf.pro.[6]   Plaintiff references an excerpt from Dr. Braun's deposition transcript to support the contention that Dr. Braun could not recall if he wrote any code in a background_mod_mf.pro file.  In that excerpt, however, Dr. Braun simply says that "the formatting is consistent with my coding style, but it's been too long for me to go line by line and say whether I wrote a particular line or someone else did."  ECF No. 374-2 at 65:14-17.

Finally, plaintiff addresses the provisos and argues that they do not apply either to Dr. Braun or Dr. Basener.  This argument also relies on the newly asserted "NINJA functionality" distinction.   Plaintiff argues that because the NINJA functionality was created in the summer of 2009 by Dr. Basener alone (citing the July 2009 email chain as well as the January 2010 provisional patent application as evidence of the NINJA functionality existing as of those dates, *see* ECF No. 374 at 20), Dr. Braun is irrelevant to this inquiry.  And, given that Dr. Basener allegedly created the relevant code in 2009 while he was not in service of the United States, plaintiff asserts that the provisos do not apply to Dr. Basener.

Throughout its response, plaintiff also offers some evidence that what became background_mod_mf.pro in fact predated Dr. Basener's first period of government service.  Again, focusing on the functionality of the software, plaintiff points to evidence that Dr. Basener had created the TAD functionality prior to becoming a Visiting Scientist in 2007.  ECF No. 374 at 6-7, 19 (citing Dr. Basener's deposition, an article published by Dr. Basener, and Chris Jengo's deposition).  This evidence serves to further muddy the waters as plaintiff implies that the relevant functionality of background_mod_mf.pro is the TAD functionality.  *See id.* at 19 ("The only document that the Government cites as evidence that Dr. Braun wrote background_mod_mf.pro is inconsistent with the other documentary

---

[6] The two alleged co-authors are Dr. Braun and Chris Jengo, both government employees during the relevant time.  Defendant did not address Mr. Jengo's contributions at any length in its motion, consequently neither do we.

evidence, which clearly shows that TAD existed prior to Dr. Basener's time as a visiting scientist at NGA."). Yet this is contradicted by Dr. Braun's characterization of the two in his deposition:

> Q: . . . And then the last [file] is background_mod_mf.pro. Do you recall what that file contained?
> A: I believe so. That was added later. That was not a part of the initial TAD versions. *And that was extending TAD from anomaly detection, which is what it was designed for*, what's its name, the Topological Anomaly Detection, *to do target detection*.

ECF No. 360-4 at 41:21-42:7 (emphasis added). It is unclear what the relevant functionalities are and when they were created.

The fundamental disagreement between the parties here is what precisely must have been "prepared" for the § 1498(b) provisos to apply: a file that was ultimately further developed into the copyrighted work, or the new, unique functionality of the copyrighted work? Defendant's position seems to be that we lack jurisdiction if there is any overlapping code whatsoever between an original file and the copyrighted work resulting from the evolution of the original file, no matter how significant the overlap or what function the overlapping code performs. On the other hand, plaintiff's position seems to be that we retain jurisdiction if the core functionality of the copyrighted work was written outside of the scope of the provisos. We take this to equate roughly to the core protectable expression(s) of the software. *See Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 839-40 (Fed. Cir. 1992). Plaintiff does not provide an explanation on why its reliance on functionality of the copyrighted work is an answer to defendant's challenge to jurisdiction in this court.

Neither party has addressed what the appropriate legal standard is or how we should apply it to NINJA.pro. Each proceeds on its own assumptions about how the provisos apply to a copyrighted work. The court's own examination suggests that there is no direct precedent to help us resolve this issue. Before venturing to assess what the law is, and to avoid unnecessarily broad or problematic conclusions, we first need to determine what the facts are. We must answer the legal question in the context of the facts, and they are not yet fully developed.

While we generally find plaintiff's arguments in response to this motion unpersuasive, we therefore are unable to grant defendant's motion because plaintiff has raised enough questions on this issue. These fact questions relate generally to the development of background_mod_mf.pro, TAD, the NINJA functionality, and Dr. Basener's work as a Visiting Scientist from 2007 to 2008. Broadly, it is unclear when the relevant aspect of background_mod_mf.pro was created, and the significance of Dr. Basener and Dr. Braun's work on the file from 2007 to 2008. It is also unclear to us what the relevant "NINJA functionality" is and how we are to define or apply it. We therefore deny defendant's motion to dismiss, without prejudice. Defendant makes no additional arguments on their alternative motion for summary judgment, consequently we also deny it without prejudice.

## II.    Defendant's Motion for Summary Judgment

Defendant's second motion is for summary judgment based on the alleged invalidity of plaintiff's copyright registration due to numerous errors in the registration application made, allegedly, with knowledge.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Entry of summary judgment is proper when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, we must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original). The party moving for summary judgment bears the initial burden of showing that no genuine dispute of material fact exists, which it may do by showing an absence of proof regarding an essential element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 323-25.

Once the moving party has supported its motion, the burden shifts to the non-moving party to identify specific facts on which a genuine dispute exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no 'genuine issue for trial.'"  *Id.* at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

17 U.S.C. § 411(a) states that a valid copyright registration is a prerequisite for bringing an infringement action.  The validity of plaintiff's copyright registration is, therefore, an essential element of plaintiff's claim and a material fact.  Under the safe harbor provision of § 411(b), a certificate of registration is valid:

> [R]egardless of whether the certificate contains any inaccurate information, unless--
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

§ 411(b)(1).

Plaintiff has obtained a copyright registration for NINJA.pro ("the '604 Registration"), ECF No. 115-2, but defendant alleges that there were several inaccuracies in the registration that do not fall within the safe harbor provision, and therefore, that plaintiff's copyright registration is invalid.  These inaccuracies are that the deposit copy is not a correct copy of the claimed work, that the dates of completion and of first publication are incorrect, and that the application does not disclose or disclaim an appreciable amount of preexisting material within the claimed work.  Plaintiff does not dispute that these errors were made.

The court previously referred to the Register of Copyrights the question of whether the United States Copyright Office ("USCO") would have refused to register GTA's copyright if it had known about nine potential inaccuracies.  *See* ECF No. 332 (Order Referring Copyright Registration Questions); ECF No. 342 (Order Referring Supplemental Copyright Registration Question).  The Register responded that the registration would not have been accepted if the USCO "had known that the application provided incorrect dates of first publication and/or completion, or that the deposit material included an 'appreciable amount' of public domain material, previously published or previously registered material, or material owned by a third party that was not excluded in the application."  ECF No. 349 at 2.

The Register also stated that "[i]f the deposit copy Geospatial provided for the '604 Registration was not first published or completed on the dates indicated in the application, the Office would have refused registration." *Id.* at 14. Thus, the remaining question before us for each of the three alleged types of inaccuracy is whether the inaccurate information was knowingly included on the application.

The Supreme Court has provided some guidance on this point in *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022). There, the Court explained that either a lack of knowledge of fact or of law can excuse an inaccuracy in a registration. *Id.* at 182. While "knowledge" in this statute refers to actual knowledge, *id.* at 185, the Court confirmed that willful blindness may support a finding of actual knowledge, *id.* at 187 (citing *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 778-79 (2020)). Willful blindness has "two basic requirements: (1) The [party] must subjectively believe that there is a high probability that a fact exists and (2) the [party] must take deliberate actions to avoid learning of that fact." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).

We first address defendant's allegations regarding the year of first completion and the date of first publication. The '604 Registration lists the "Year of Completion" as 2011, and the "Date of 1st Publication" as January 28, 2011. ECF 115-2 at 2. Plaintiff does not dispute that the deposit copy of the '604 Registration is dated October 15, 2015. ECF No. 378 at 5. Plaintiff also does not dispute that "the claimed software of the '604 Registration" was neither completed in 2011, nor first published on January 28, 2011. *Id.* at 5-6. The information on the certificate is thus inaccurate, and the Register has indicated that "[i]f the deposit copy Geospatial provided for the '604 Registration was not first published or completed on the dates indicated in the application, the Office would have refused registration." ECF No. 349 at 14.

The only evidence that defendant points to as to plaintiff's knowledge regarding the inaccuracy of this information is a brief excerpt from the deposition of Mr. Mark Vandenabeele, the owner and CEO of GTA, who completed the copyright application form:

Q. But if we go back to Exhibit 5 which is the copyright registration, under year of completion, you put 2011. So the -- did you believe the code that's labelled NINJA_2010 was completed in [] 2011?
A. Did I believe -- did I believe the code that was labelled 2010 was created in 2011? No.
Q. Then why did you put as the year of completion 2011?
A. From discussion with counsel.

ECF No. 361-1 at 66:6-17.  Plaintiff offers no evidence in response.

In determining whether defendant has met its summary judgment burden on this issue, we note that, previously in his deposition, Mr. Vandenabeele indicated that he did not believe "completed" and "created" to mean the same thing in context of the application.  When asked, "When you filled out the copyright application, what was your understanding of the creation?," Mr. Vandenabeele responded, "Well, this doesn't say creation.  It says completion."  *Id.* at 59:13-19.  Given the conflicting use of "completed" and "created" in the exchange cited by defendant, we draw an inference in favor of plaintiff, the non-moving party here, and find defendant has failed to carry its burden as to this inaccuracy.  There is a genuine issue of material fact as to whether Mr. Vandenabeele had actual knowledge that the year of completion was not 2011.

We next address the allegation that the deposit copy is not a correct copy of the claimed work.  Plaintiff does not dispute that "source code submitted as the deposit copy for the '604 Registration was not the version for which GTA sought registration."  ECF No. 378 at 8.  Moreover, in a previous filing, plaintiff admitted that "an October 15, 2015 copy of NINJA.pro was mistakenly submitted as the copyright deposit, instead of the early 2010 version that should have been submitted."  ECF No. 307 at 1.  The deposit copy is admittedly inaccurate, regardless of whether one considers the dates listed on the application (2011) or the dates plaintiff contends are accurate (2009 or 2010).  Regarding an inaccurate deposit copy, the Register stated:

If the deposit copy provided for the '604 Registration was the 2015 version of the Work and not the version published or completed on the date indicated on the application (January 28, 2011), or if the Work included material that was added after

January 28, 2011, the Office would have refused the registration.

ECF No. 349 at 17-18.

As evidence of a knowing inaccuracy, defendant alleges that Dr. Basener was aware that the NINJA code lacked version control and that he was aware of editing and changes made to the code since its inception. Defendant notes that Dr. Basener provided two copies of NINJA to Mr. Vandenabeele without any guidance as to which file should be used. *See* ECF No. 313-2 (email from Dr. Basener to Mr. Vandenabeele). Defendant also notes that Dr. Basener admitted in his deposition that he did not look at the code prior to sending it to Mr. Vandenabeele. ECF No. 360-3 at 243:12-17.

Defendant further points out that in an affidavit previously submitted in this case, Dr. Basener admitted that the correct version that should have been submitted would have been from early 2010. ECF No. 307-1 ¶ 7. In that affidavit, he stated that the deposit copy includes references to software known as Full Spectrum Tool Kit ("FSTK"), which were implemented between February and May 2010 (after plaintiff's alleged completion date). ECF No. 307-1 ¶ 9. Defendant points to this as evidence that, had Dr. Basener looked at the code, he would have been aware that the code was not in fact from the correct time period.

Again, however, defendant cannot point to any direct evidence that shows actual knowledge on the part of either Dr. Basener or Mr. Vandenabeele that the file submitted was not actually from early 2010 as neither Dr. Basener nor Mr. Vandenabeele looked at the code before submitting it. ECF No. 360-3 at 244:13-16 (Dr. Basener's deposition transcript); ECF No. 361-1 at 56:22 (Mr. Vandenabeele's deposition transcript). As he stated in his deposition, Dr. Basener searched for the oldest code he had, and believed that the file he found was from the correct time period. ECF No. 360-3 at 243:12-17.

In an attempt to show that plaintiff was willfully blind to the inaccurate version, defendant emphasizes that Dr. Basener did not look at the code before sending it to Mr. Vandenabeele. *See id.* at 244:13-16. But defendant does not point to any evidence to satisfy the first requirement of the willful blindness test: that plaintiff "subjectively believe[d] that there

[was] a high probability that a fact exist[ed]." *Roche Diagnostics Corp.*, 30 F.4th at 1118. The relevant fact here is that the deposit copy was inaccurate. Thus, to meet this test, Dr. Basener must have subjectively believed that there was a high probability that the deposit copy was not from early 2010. Instead, Dr. Basener's deposition testimony about the file he sent to Mr. Vandenabeele was that he "believed that that was the copy of NINJA.pro prior to GeoSage." ECF 360-3 at 243:13-14. This statement shows that Dr. Basener did not have a subjective belief that the deposit copy was from any date other than early 2010. Plaintiff was very likely careless in submitting the application, but defendant has not established that no genuine issue of material fact exists as to the willful blindness of either Dr. Basener or Mr. Vandenabeele with respect to the inaccurate deposit copy.

We are not in a position, on summary judgment, to make credibility findings. Based on the facts in the record, the court is not persuaded that defendant's evidence on summary judgment demonstrates that plaintiff had actual knowledge that an inaccurate version of NINJA.pro was submitted as the deposit, or that plaintiff was willfully blind to this inaccuracy. Therefore, a genuine issue of material fact remains as to whether the inaccurate version was submitted with knowledge of the inaccuracy.

Finally, we turn to the third type of inaccuracy alleged: the failure to disclose or disclaim an appreciable amount of preexisting material within the claimed work. Despite plaintiff's contention that it only claims copyright over the "NINJA functionality," the '604 Registration did not exclude any preexisting or otherwise unclaimable material. ECF No. 378 at 11-13 (plaintiff's responses to defendant's alleged undisputed facts 11, 12, and 14). *Compare* ECF No. 115-2 ('604 Registration that does not contain a "Limitation of copyright claim" section or any material excluded) *with* ECF No. 378-2 (example of a Certificate of Registration containing a "Limitation of copyright claim" section with material excluded). The '604 Registration therefore consisted of the entirety of the NINJA.pro code submitted as the deposit copy.

The Compendium of U.S. Copyright Office Practices ("Compendium") defines "unclaimable material" as "[p]reviously published material," "[p]reviously registered material," "[m]aterial that is in the public domain," and "[c]opyrightable material that is owned by a third party." U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES

§ 621.1 (3d ed. 2014)[7]; *see also id.* at Glossary (defining "unclaimable material" for the purposes of copyright registration). The Compendium states that "[i]f the work described in the application contains an appreciable amount of unclaimable material, the applicant should identify the unclaimable material that appears in that work and should exclude that material from the claim." *Id.* § 621.1.

Here, even assuming plaintiff included the correct 2009 or 2010 version of NINJA.pro, the unclaimable material would have included, at minimum, any previously published code, such as the original background_mod_mf.pro code that was produced during Dr. Basener's first contract with NGA from 2007 to 2008. In addition, the submitted version also includes unquestionably unclaimable material written during Dr. Basener's second time in government service in early 2010. Plaintiff admits that the deposit copy "includes code to which GTA does not claim copyright." ECF No. 378 at 8. Defendant claims that almost 1800 lines of the 3667 total lines of code in NINJA.pro should have been disclaimed: plaintiff does not respond to or refute this claim.

Defendant alleges that Dr. Basener had actual knowledge of this inaccuracy because he, as the author of NINJA.pro, was aware of how he created NINJA.pro and that the starting point of NINJA.pro was background_mod_mf.pro. However, defendant offers no evidence that Dr. Basener had actual knowledge that Mr. Vandenabeele failed to disclaim any unclaimable material on the application. Defendant also identifies no evidence that Mr. Vandenabeele had actual knowledge of the inaccuracy on the application. Instead, defendant focuses on plaintiff's willful blindness of this inaccuracy.

As discussed above, the first requirement of the willful blindness standard is that plaintiff must "subjectively believe that there is a high probability that a fact exists." *Roche Diagnostics Corp.*, 30 F.4th at 1118. The relevant fact here is that NINJA.pro included unclaimable material that was not being excluded on the copyright application. Defendant again notes that Dr. Basener, as the author of NINJA.pro, was well aware of the creation of the code and that NINJA.pro began as background_mod_mf.pro as he

---

[7] References to the Compendium are to the version released in December 2014, as it contains the governing principles the USCO would have applied at the time plaintiff filed its application in 2017. *See* ECF No. 349 at 5.

testified to in his deposition. *See* ECF No. 360-3 at 265:16-266:4. Defendant seems to argue that, because of his knowledge of NINJA.pro's development, Dr. Basener would have had a subjective belief that there was a high probability that NINJA.pro contained unclaimable material.

The second requirement of willful blindness is that the plaintiff must "take deliberate actions to avoid learning of that fact." *Roche Diagnostics Corp.*, 30 F.4th at 1118. Here, defendant points out that Dr. Basener did not review the code to identify material that should be excluded prior to sending multiple versions to Mr. Vandenabeele. *See* ECF No. 360-3 at 244:13-16. Defendant also relies on the fact that there is no evidence showing that Dr. Basener told Mr. Vandenabeele that there was previously published material contained within the code, e.g., the background_mod_mf.pro code, despite Dr. Basener and Mr. Vandenabeele having a minimum of five conversations about the application. *See* ECF No. 361-1 at 49:14-19 (Mr. Vandenabeele's deposition transcript). Separately, defendant notes that Mr. Vandenabeele made no inquiry into whether any material needed to be disclaimed. Mr. Vandenabeele, when presented with the page of the copyright application form that prompted him to identify any preexisting material that should be excluded from the copyright claim, simply left it blank. *See* ECF No. 115-2 ('604 Registration not containing a "Limitation of Claim" section). There is no evidence that Mr. Vandenabeele asked Dr. Basener or counsel whether this page of the application was applicable.

While defendant is correct that willful blindness by either Dr. Basener or Mr. Vandenabeele would be sufficient to invalidate the '604 Registration, on the facts presented we are not persuaded that defendant has provided sufficient evidence to meet its burden that plaintiff was willfully blind to the failure to disclaim unclaimable material. There are several factual questions remaining surrounding Dr. Basener and Mr. Vandenabeele's knowledge and subjective beliefs on this issue. In sum, there remain genuine issues of material fact as to whether plaintiff had knowledge that of any of the alleged inaccuracies in the '604 Registration. We note in closing that, in response to defendant's motion generally, plaintiff's primary argument is that defendant has not carried its burden with respect to showing either actual knowledge or willful blindness for any of the alleged inaccuracies. While plaintiff does not identify any evidence to support a showing that the inaccuracies were made

without knowledge,[8] we do not read defendant's evidence as strongly or conclusively as it does and cannot find that defendant has carried its burden of showing an absence of proof regarding the validity of plaintiff's copyright registration. We therefore deny defendant's motion for summary judgment.

CONCLUSION

As we deny both of defendant's motions today, these two threshold issues remain standing in the way of plaintiff's copyright claim. As always, it is the plaintiff's burden to prove that we have jurisdiction over its copyright claim. And, we have unresolved questions relating to the validity of plaintiff's copyright registration which defendant is putting forward as a comprehensive defense to plaintiff's copyright claim. Both threshold issues must be decided before we can proceed to the infringement stage of this copyright claim. The court is amenable to conducting a factual inquiry limited to these two issues. In that light, the parties are directed to file a joint status report on or before May 17, 2024, indicating their positions on two questions: (1) whether the court should try both threshold issues simultaneously, and if not, in what order; and (2) whether to merge the remaining copyright infringement questions with these threshold issues into a single copyright trial, separate from the patent validity or infringement questions in this case.

---

[8] What plaintiff did include, however, was an irrelevant argument that plaintiff's actions were objectively reasonable and consistent with those of more experienced and sophisticated copyright applicants. Plaintiff argues that "GTA's conduct, far from exercising inadequate care, was consistent with that utilized by the massive corporation L3Harris, who employs a full-time intellectual property counsel with 30 years of experience to handle IP issues." ECF No. 378 at 19. Relying on excerpts from the deposition of L3Harris's in-house intellectual property counsel, Mr. Mitch Evander, plaintiff asserts that L3Harris apparently submitted a copyright application for NINJA.pro without fully investigating authorship, publication date, or whether and to what extent portions of the work were preexisting. Therefore, according to plaintiff, this sets the standard to which plaintiff's own copyright application should be held. Plaintiff effectively argues that the extent of a third party's due diligence, or lack thereof, should be determinative here. Yet this argument ignores the statutory framework of 17 U.S.C. § 411, and the court is unconvinced that a comparison to a third party provides any relevant information about the validity of plaintiff's own copyright application.

We also lift the stay previously placed on pretrial motions, *see* ECF No. 418, and adopt the following briefing schedule for the currently pending motions *in limine* (ECF Nos. 402, 404, 405, 408, 409, 411, and 412): responses shall be due on or before May 31, 2024, and replies shall be due on or before June 21, 2024.

Accordingly, the following is ordered:

1. Defendant's motion to dismiss, or in the alternative for summary judgment, ECF No. 360, is denied without prejudice.

2. Defendant's motion for summary judgment, ECF No. 361, is denied.

3. The parties shall file a joint status report on or before May 17, 2024.

4. The parties shall file their responses to currently pending motions *in limine* on or before May 31, 2024.

5. The parties shall file their replies in support of the motions *in limine* on or before June 21, 2024.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge