# In the United States Court of Federal Claims

No. 16-346C
(Filed: July 7, 2026)
(Re-issued: August 3, 2026)[1]
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * *

GEOSPATIAL TECHNOLOGY
ASSOCIATES, LLC,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * * *

## OPINION

This is a patent and copyright case brought against the government for infringement of plaintiff's Patent No. 8,897,489 (the "'489 patent") and the associated copyright. Pending is defendant's motion to dismiss due to the State Secrets Privilege. The motion is fully briefed. We held oral argument on June 11, 2026, and an *in camera ex parte* hearing immediately thereafter at which the government was asked to clarify and explain certain representations made in the classified motion. Because the continued prosecution of this case, subject to the privilege, would be unworkable for the government's defense and because a trial would jeopardize the secret nature of some information likely to be relied on at trial, the case cannot be litigated further and must be dismissed.

## BACKGROUND

[1] This opinion was originally issued under seal to afford the parties an opportunity to propose THE redaction of confidential material. The parties represent that no redactions are necessary. The opinion thus appears in full.

The Complaint in this action was filed in March of 2016, and as amended, alleges direct patent and copyright infringement by the United States acting through the National Geospatial-Intelligence Agency and potentially other agencies. In 2021, the United States asserted the State Secrets Privilege via motion (ECF No. 249). The privilege was accepted by the court in our order of June 3, 2021 (ECF No. 258), in which we found that the Secretary Defense had properly claimed the privilege after "'actual personal consideration by that officer'" and that the government sought its invocation over privileged information. Order of June 3, 2021 at 6 (quoting *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953)). The court left for another day the question of how the case should proceed. *Id.* at 8.

The Secretary of Defense invoked the privilege, and the court accepted it as to six categories of information regarding geospatial intelligence, stated here in abbreviated form: 1) research and development; 2) information about the government's capabilities in the field of hysperspectral imagery; 3) spectral analysis; 4) software function; 5) specific military or intelligence systems; 6) any particular geospatial images and data. *Id.* at 7-8. As the court explained, defendant made the case that "disclosure of this information 'reasonably could be expected to cause significant harm to the national security of the United States." *Id.* at 8 (quoting Decl. of Sec'y of Defense ¶ 3 (attached to Mot. for Acceptance of the Privilege as Ex. A)).

At that juncture, procedurally, the patent claims asserted by plaintiff had been found invalid as anticipated by prior art. *See Geospatial Tech. Assoc's, LLC v. United States*, No. 16-346C, 2021 WL 2325007 (June 3, 2021). The court thus required additional information "whether the government [would] be denied any defenses related to [plaintiff's] copyright infringement claims." Order of June 3, 2021 at 9 (ECF no. 258.) Rather than resolving that issue immediately thereafter, however, the court allowed the case to proceed with the copyright claims and on reconsideration of the patent invalidity finding.

Reconsideration of the court's finding of invalidity as to the patent was subsequently granted, in part, on November 29, 2021. 185 Fed. Cl. 113 (2022) (public opinion reissued on January 11, 2022).. We held that our previous finding regarding inherency was wrong and thus certain claims of the patent remained valid, i.e., were not anticipated. *Id.* at 119-120 (finding on inherent step of unmixing in the Archer system). After extensive motion practice concerning data rights and other defenses not relevant to the present issue, the parties cross-moved again on the defendant's other invalidity defenses. The result was that two issues of validity remained for trial: indefiniteness (regarding the existence *vel non* of a means-plus-function

claim and whether the specifications supplied the necessary information for such) and obviousness (motivation to combine prior art). *Geospatial Tech. Assocs., LLC v. Unted States*, 164 Fed. Cl. 267 (2023).

That set off an exhaustive pretrial motion practice regarding, *inter alia*, developing a record for trial that was consistent with the invocation of the State Secrets Privilege by the government as to certain pieces of evidence, deposition testimony, and certain of plaintiff's theories of damages. We struck certain documents and precluded the use of others through multiple orders. The first was via our order of March 19, 2024 (ECF No. 437), in which we granted defendant's motion *in limine* (ECF No. 417)[2] based on the State Secrets Privilege as it concerned four categories of information accepted by the court previously as subject to the privilege. Excluded were:

1. 72 documents from plaintiff's original exhibit list;
2. 11 documents from defendant's initial witness list;
3. any testimony from plaintiff's witness, Dr. Basener, regarding his experience with relevant nonpublic government programs, their successes and benefits, and the development and function of the PRISM algorithms;
4. any similar testimony from Dr. Basener's cofounder, Mr. Vandenabeele;
5. testimony from plaintiff's technical expert, Dr. Jones, regarding the use or benefit of certain government programs; and twelve different paragraphs from his expert reports;
6. testimony from plaintiff's damages expert, Mr. Holzen, regarding relevant nonpublic government programs, cost savings related to any particular images or targets of interest generated through those programs, and the use or benefits of particular government programs or systems;
7. five paragraphs from his expert report on damages;
8. testimony from government witnesses regarding the same or similar government programs, including defendant's technical expert, Mr. Stocker.
9. One paragraph from Mr. Stocker's invalidity report; and
10. Multiple paragraphs from the depositions of Char Larson, Dr. Joseph Schoppelrei, and Mrtin Flynn, which were intended to be offered in lieu of live testimony.

[2] Defendant's motions to exclude based on the privilege were accompanied by *in camera* motions further detailing the reasons for the requested exclusion.

The government noted in its motion *in limine* that it had not yet made a final determination regarding whether to move to dismiss based on the privilege was not yet made. To potentially facilitate that process, it requested that plaintiff be required to make a proffer regarding whether it could carry its burden to prove a *prima facie* case given the excluded information. We ordered plaintiff to serve a new damages report, file a proffer regarding secondary indicia of non-obviousness, and file an updated pretrial memorandum, to which the government was ordered to respond. Order of March 19, 2024 at 1-2.

After plaintiff did so, defendant's response came in the form of a renewed motion to exclude (ECF No. 456), which again asserted that Mr. Holzen's report, plaintiff's proffer, and its pretrial memorandum all ran afoul of the four categories of excluded information that defendant asserted in its first motion *in limine* concerning the privilege. We granted that motion on August 12, 2024 (ECF No. 469). Owing to the asymmetrical nature of the invocation of the privilege (neither plaintiff nor its counsel can view the supporting *in camera* materials), we gave plaintiff another opportunity to develop an unoffending damages report, a new proffer regarding secondary indicia, and a pretrial memorandum. *Id.* at 8-9.

The resulting second attempt was unsuccessful, however. After plaintiff filed those documents, defendant renewed its motion to exclude (ECF No. 478) on February 28, 2025. That motion was again successful as it pertained to Mr. Holzen's damages report, which was excluded along with the corresponding section of plaintiff's pretrial memorandum. Order of May 7, 2025 (ECF No. 482). Given that this was the third iteration of Mr. Holzen's report, we declined to afford plaintiff another attempt at an unoffending damages report. *Id.* The result of all of which was that plaintiff's preferred method of proving damages was precluded along with much of the evidence it sought to rely on for secondary indicia of non-obviousness.

Plaintiff subsequently offered a new, allegedly unoffending, theory of damages based on an allegedly analogous license agreement with the Israeli Ministry of Defense. The disclosure of this theory led to another motion *in limine* (ECF No. 493), although not based on the privilege. Defendant argued that plaintiff should be limited to what it disclosed in its third supplemental disclosures. We granted that motion in part, holding that plaintiff would be held to the evidence and theories disclosed prior to trial. Order of December 15, 2025 (ECF No. 502).

Throughout this several-year process, the court repeatedly encouraged defendant to make its final determination as to whether the privilege would

preclude a liability and/or damages trial in this case. After the court set the final pretrial schedule and anticipated setting the matter for trial, defendant was prompted to make that determination in the affirmative and has thus moved for dismissal on the basis that, due to the exclusion of the privileged information, the case cannot be tried because: 1) plaintiff will be unable to make a *prima facie* case of damages; 2) defendant will be denied defenses as to liability and damages; and 3) the excluded information is so central to the litigation as a whole that even a truncated trial could not be conducted without threatening disclosure of highly secret information. Def.'s Mot. To Dismiss (ECF No. 510). Defendant also filed an *ex parte*, *in camera* brief further supporting these assertions. The motion is now fully briefed.

## DISCUSSION

We are convinced that defendant is correct as to the second and third rationales for dismissal. As became even more apparent on the record during the *in camera* argument, defendant has persuaded us that the risk of disclosure of privileged information is simply too high were this case to go to trial and defendant's defensive case would be severely hampered.

We need not and do not reach defendant's argument regarding plaintiff's *prima facie* case because it is unnecessary given our other holdings, but we note that it likely would not be persuasive because Section 1498 mandates in a case of this age that compensation (damages) for the infringement (if proven) would include reasonable attorney fees. Thus, even if evidence of other damages for infringement was excluded from the trial, plaintiff could not be precluded from making its case for attorney fees.

### I. The Government's Defense As To Liability and Damages Will Be Hampered

On the liability issues of patent validity, the government will be too severely hampered by the information necessarily excluded by the invocation of the privilege. It will likewise be precluded from offering key evidence to rebut plaintiff's damages case and be hampered in its ability to put on its own evidence of valuation.

#### A. Invalidity

The issue of obviousness remains. Thus we must decicde whether a person of ordinary skill in the art would have had a motivation to combine known elements in the prior art to come up with the method disclosed in the patent. Defendant's ability to put on evidence regarding obviousness will be

impaired because its experts will be unable to fully disclose information regarding the state of the art at the time of the invention. This is so because that information would run afoul of the categories excluded from trial regarding the government's capabilities, research and development, and potentially specific government programs. The government's experts would thus be unable to rebut much of the factual information that Dr. Basener or plaintiff's expert, Dr. Jones might offer at trial regarding what was known and what was being developed in the field by the government at the time of the invention.

Further, defendant will be prevented from rebutting plaintiff's evidence of secondary indicia, such as long-felt need, commercial success, copying, and praise in the industry for the invention. The government also avers that it will be precluded from offering its own affirmative secondary evidence that indicates a lack of success or lack of nexus between the invention and the success claimed.[3] It is particularly the proof of nexus, or lack thereof, between the patented elements of the invention and the claimed success that is problematic for trial. Even if Dr. Basener is permitted to speak regarding his knowledge of government programs and systems—an independent problem dealt with below—defendant makes the case that it cannot rebut that information by showing how the Ninja.pro software differs from the actual success achieved by government systems.

In sum, we are persuaded that the topic of obviousness is inappropriate for trial in light of the categories of evidence excluded. The government would be severely hampered in any effort to rebut plaintiff's assertions of validity and unable to present in a coherent fashion its own affirmative case of invalidity.

B. Damages

The same is also true regarding defendant's damages case for two reasons. First, as detailed in its *in camera* brief, it cannot put on its full evidence regarding its own theory that a single, paid up, lump sum license is the most appropriate way to value the compensation owed plaintiff.

Second, defendant will be precluded from offering evidence to

---

[3] Plaintiff argues that defendant has no right to offer such information unless plaintiff offers evidence of secondary indicia. We do not need to resolve that issue, however, because although plaintiff posited that it could put on its obviousness defense without secondary indicia, it did not foreswear doing so.

counter any assertion of apportionment of success between the patented or copyrighted and non-patented or copyrighted elements of plaintiff's software. This goes back to same fundamental concern expressed above, that evidence of the government's programs and capabilities in this field are excluded and cannot be disclosed during trial. So, like the issue of validity, a trial on this issue is inappropriate.

## II. There is Too Great A Risk of Disclosure Of Privileged Information At Trial

That brings the court to a more basic concern, one hinted at above, the trial would be, on the whole, an exercise in futility due to frequent and necessary attempts to limit disclosure before it happened, which would be either impossible, or without the benefit of plaintiff's input because counsel for the government could not discuss the issue in the presence of plaintiff's counsel. Such a trial would strain the bounds of due process and would ultimately not lead to a record that would be appropriate to adjudicate the parties' rights viz-a-viz plaintiff's intellectual property.

Additionally, if a fulsome record were produced at trial it would be riddled with disclosures that threaten national security and violate the court's earlier orders accepting the Secretary's invocation of the State Secrets Privilege. Multiple witnesses in this case simply know too much, and the temptation and incentive to test the limits of the privilege would highlight in a public forum the existence of certain secret information, the mere existence of which ought not be disclosed.

## CONCLUSION

The inescapable conclusion is thus that the case must now be dismissed. Although it is seemingly unfair to plaintiff to do so on the eve of trial, after much effort and resources were expended, we note that this potential hazard was an obvious pitfall since 2021 when Judge Grigsby accepted the government's invocation of the privilege. It took several more years to concretize the likely presentations at trial, which finally necessitated the government to "flip the kill switch." Even regardless of the equities of a dismissal at this stage, the interest of national security is paramount in the federal courts, and we simply cannot risk the likely disclosures at trial. Accordingly, defendant's motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge